## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Julie Dalton, individually and on behalf of all others similarly situated, | Civil Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| Casey's Retail Company, d/b/a Casey's General Store, and Casey's General Stores, Inc. | |
| Defendant. | |

## <u>INTRODUCTION</u>

1.      This case is based on the same factual allegations that this district has already found are sufficient to state a claim under Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.* and its implementing regulations. *See Dalton v. Kwik Trip, Inc*., 21-CV-0098 (MJD/BRT) (Memorandum and Opinion, ECF 35) (D. Minn. Oct. 5, 2021).

2.      Plaintiff and the members of the putative class are blind and visually impaired individuals who rely upon auxiliary aids and services such as screen reading software and speech-enabled accessible information and communications technology that makes visually delivered materials available to individuals who are blind or have low vision.

3.      Defendant offers its customers who are checking out the option to use a point-of-sale ("POS") terminal to pay for their purchases and an opportunity to receive cash-back at the time of their purchase.

4.      The "cash-back" feature typically presents itself as an option when a customer uses a debit card to complete a transaction at a POS terminal. As the customer inserts their debit card into the POS terminal, a series of prompts will display information and options to the customer. One option is to receive a specified amount of physical currency, the total of which is charged to the debit card in addition to the cost of the sale. An employee will then hand the requested cash to the customer.

5.      Plaintiff and other customers with visual disabilities who patronize Defendant's stores do not have the option to withdraw cash in the same safe, private, and independent way that Defendant's sighted customers can.

6.      As explained more fully below, in order for Plaintiff (and others with visual disabilities like her) to use Defendant's cash-back feature, she must rely on a sighted employee or other third-party to complete the transaction, subjecting her to the risk of theft and fraud.

7.      This concern is significant. In order to complete a cash-back transaction, Plaintiff must trust a third-party to enter the correct amount of the cash request into the POS device.  But Plaintiff is unable to independently confirm the amount that has actually been entered. As a result, Plaintiff is faced with the proposition that her request for $40 in cash-back will instead be entered as an $80 cash-back request by the third-party, who then provides her with the $40 she has requested, stealing the remaining $40 dollars from her.

8.     Technology exists that allows blind customers to engage in financial transactions safely, privately, independently, fully and equally. For example, ATM machines allow blind individuals to complete transactions safely, privately, and independently by allowing the user to access all information audibly through headphones and to make their selections using a tactile keypad. Taxi companies also employ accessible point-of-sale devices that allow blind riders to independently operate backseat payment systems without relying on the driver or a sighted companion. According to the National Federation of the Blind, Airline check-in-kiosks also permit full non-visual access, and accessible point-of-sale machines are also available. These devices utilize "text-to-speech" technology that translates the text displayed on the screen into audible, synthesized speech and provide tactile controls that allow blind users to make and verify selections that have been made independently.

9.     Although Defendant has been using POS terminals with cash-back features since the enactment of the ADA more than three decades ago, it has failed to meet its obligation to keep pace with changing technology and to provide auxiliary aids that protect the privacy and independence of individuals with visual disabilities.

10.     Plaintiff, in her individual capacity and also on behalf all others similarly situated, seeks the following declaratory and injunctive relief: (1) a declaration that Defendant's inaccessible POS terminals violate the ADA as described in this Complaint; and (2) a company-wide injunction requiring Defendant to update or replace all such POS terminals so that they are safely, privately, independently, fully and equally accessible to

blind or other vision impaired individuals. Plaintiff also seeks an award of attorney's fees and costs.

## JURISDICTION AND VENUE

11.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

12.     Plaintiff's claims asserted in this Complaint arose in this judicial district and Defendant does substantial business in this judicial district.

13.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

14.     Plaintiff Julie Dalton is and, at all times relevant hereto, was a resident of Minnesota. As described above, Plaintiff is blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

15.     Defendant is a corporation headquartered in Ankeny, Iowa. Defendant operates convenience stores in the Midwest, including many stores in Minnesota, and throughout 17 states.

16.     Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

17.     Defendant owns and operates, upon information and belief, one-hundred eighty (180) convenience stores in Minnesota and two thousand three hundred and thirty-three (2,333) convenience stores in 17 states.

18.     According to Defendant's website www.caseys.com: Casey's convenience stores offer a wide of products including food, fuel, pizza, wings, salad, wraps; groceries, milk, eggs, frozen foods, household essentials, kitchen staples, medicine-cabinet must haves, and cleaner burning fuels.

19.     Defendant's website also includes a "Find a Casey's" feature confirming that "Casey's serves the boonies so [if you cannot locate a store near you] you must really be out there."

20.     Defendant employs centralized company-wide policies, practices and procedures with regard to its information technology evaluation and procurement and rolls out   point-of-sale   equipment   on   a   company-wide   basis.   See e.g.,https://www.cspdailynews.com/technologyservices/caseys-launches-new-pizza delivery-pos;   https://www.cspdailynews.com/general-merchandise/caseys-provide-pos-data-iri-new-partnership. Defendant's point-of-sale technology procurement and implementation decisions are made on a company-wide basis, do not vary by store, and are instead common and consistent throughout Defendant's company.

21.     Plaintiff has visited Defendant's stores from time to time including the 210 20th St. NW, Faribault, MN; a location she has been to the at issue many times over the years to purchase gas and various other things like soda and snacks.  Ms. Dalton lives in

Richfield, Minnesota – which is approximately 45 miles from Faribault, Minnesota. Her family has owned cabins in Faribault since 1976, and Ms. Dalton has regularly visited Faribault since that time. She will continue to visit Faribault regularly and Defendant's Faribault store as she has in the past.

22.     Plaintiff would like to withdraw cash from Defendant's POS terminals by using the widely available cash-back feature.

23.     However, the cash-back feature of Defendant's POS terminals, as presently designed and employed, cannot be operated by individuals with visual disabilities safely, privately, independently, fully and equally because Defendant's POS terminals fail to provide audio output sufficient to indicate that there is a cash-back feature and related options, even though this information appears visually on the screen. The POS terminals also fail to announce the amounts of money that can be selected for cash-back. And the POS terminals also do not announce the amount of money actually dispensed when a customer uses the cash-back feature, even though this information also appears visually on the screen.

24.     Plaintiff and other customers with visual disabilities are therefore deprived of the freedom to use the POS terminals safely, privately, independently, fully and equally, as Defendant's sighted customers can.

25.     The only option for Plaintiff and other customers with visual disabilities to use the cash-back feature is to ask an employee or other third-party to complete the cash-back transaction. But, as set forth above, relying on third-party assistance to operate the POS terminal for cash-back creates an unnecessary risk of theft and breach of privacy.

26.     Plaintiff is aware of and concerned about the risk of theft, as there is no way Plaintiff can independently discern the actual amount of cash that is dispensed except for relying on a third-party. As a result, Plaintiff could not and is not able to safely and independently use Defendant's POS cash-back feature when she visited Defendant's location described herein.

27.     Defendant's POS terminals deny Plaintiff and other customers with visual disabilities the ability to get cash back safely and privately that Defendant provides to its other customers who do not have visual disabilities.

28.     Defendant could use readily available technology to afford individuals with visual disabilities the same safe and private cash-back experience it offers to its sighted customers.

29.     Plaintiff will take advantage of Defendant's POS cash-back device as soon as she can do so safely, securely, and independently.

30.     As set forth above, this kind of technology is not novel or unique.

31.     Indeed, Plaintiff and others like her are able to regularly use accessible ATMs, screen-readers, and other accessible technology independently and without compromising security or increasing risk of theft.

32.     Plaintiff seeks the same full and equal access to Defendant's POS terminals that Defendant's sighted customers have.

33.     Absent the relief requested in this matter, Plaintiff and individuals with visual disabilities like her will continue to be denied full and equal enjoyment of Defendant's POS terminals.

## CLASS ALLEGATIONS

34.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), individually and on behalf of the following classes:

> All persons who are (a) blind or who have low-vision within the meaning of the ADA, and (b) use or will use the subject POS terminal of any store owned or operated by Defendant within Minnesota, and have therefore been subjected to a lack of full and equal access to its point-of-sale transaction services (the Minnesota Class); and

> All persons who are (a) blind or who have low-vision within the meaning of the ADA, and (b) use or will use the subject POS terminal of any store owned or operated by Defendant within the United States, and have therefore been subjected to a lack of full and equal access to its point-of-sale transaction services (the National Class).

35.    This action is a prototypical civil-rights action of the kind expressly contemplated for certification by the draftsman of Fed. R. Civ. P. 23(b)(2). The note to the 1966 amendment to Rule 23 states: "Subdivision (b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. . . Illustrative are various actions in the civil rights filed where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." *See also, Newberg on Class Actions* § 4:40 (5th ed. 2014) ("The types of civil rights cases that have often been certified as (b)(2) class actions include . . . disability discrimination actions under the Americans with Disabilities Act (ADA).").

## NUMEROSITY

36.     The class described above is so numerous that joinder of all individual members in one action would be impracticable.

37.     Defendant operates two thousand three hundred and thirty-three (2,333) convenience stores in 17 states, excess of one-hundred eighty (180) of which are in Minnesota. These facts, together with the sheer number of persons with mobility disabilities in the United States, easily permits a common-sense inference that the numerosity requirement has been met in this matter.

38.     According to the United States Department of Justice: "The U.S. Census Bureau's 2002 Survey of Income and Program Participation (SIPP) found that there are 51.2 million people with disabilities in the United States . . . Millions of people with disabilities regularly travel, shop, and eat out with family and friends . . . The Administration on Aging projects that by 2030 there will be more than 69 million people age 65 and older, making up approximately 20% of the total U.S. population. The large and growing market of people with disabilities has $175 billion in discretionary spending, AARP says that four million Americans turn 50 each year and that people age 50 and older spent nearly $400 billion in 2003. At age 50, adults are likely to experience age-related physical changes that may affect hearing, vision, cognition, and mobility."

39.     According to the American Foundation for the Blind, an estimated 32.2 million adult Americans (or about 13% of all adult Americans) reported they either "have trouble" seeing, even when wearing glasses or contact lenses, or that they are blind or unable to see at all.

40.     According to The National Federation of the Blind, the number of non-institutionalized individuals reported to have a visual disability in the United States in 2016 is 7,675,600 -- 86,500 of whom reside in Minnesota.

41.     According to the National Institutes of Health (NIH), the number of people with visual impairment or blindness in the United States is expected to double to more than 8 million by 2050, according to projections based on the most recent census data and from studies funded by the National Eye Institute, part of the National Institutes of Health. Another 16.4 million Americans are expected to have difficulty seeing due to correctable refractive errors such as myopia (nearsightedness) or hyperopia (farsightedness) that can be fixed with glasses, contacts or surgery.

42.     According to the United States Center for Disease Control and Prevention (CDC), Vision disability is one of the top 10 disabilities among adults 18 years and older.

43.     In addition, Plaintiff anticipates that the record evidence gathered during discovery will further demonstrate that Rule 23(a)(1) has been satisfied in this matter.

## TYPICALITY

44.     Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

45.     Plaintiff presents claims typical of those of the putative class members. Plaintiff and the class members' all have the same grievance and are all entitled to the same relief.

46.     Plaintiff's interests align with the interests of the putative class because she and each class member seek injunctive relief requiring Defendant to make changes to its existing POS devices and related policies, practices and procedures in order to ensure Defendant's stores become and remain compliant, and which relief would benefit all members of the proposed class.

## COMMON QUESTIONS OF FACT AND LAW

47.     There are factual and legal issues common to Plaintiff and all class members. As explained herein, Defendant's existing POS devices violate the ADA, and Defendants policies, practices and procedures —which are imposed across all of Defendant's stores— fail to ensure that its stores provide POS technology that is that does not discriminate against people who are blind or have low vision within the meaning of the ADA. This Court could remedy Defendant's violations by issuing an injunction requiring a change to Defendant's POS devices and related policies, procedures and practices. Accordingly, "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2), including:

a. Whether Defendant operates places of public accommodation and are subject to Title III of the ADA and its implementing regulations;

b. Whether Defendant's POS terminals fail to provide individuals with visual disabilities who patronize Defendant's stores the option to withdraw cash in the same safe, private, independent, full and equal manner that Defendant's sighted customers can;

c. Whether Defendant's policies, practices and procedures discriminate against Plaintiff and putative class members in violation of Title III of the ADA and its implementing regulations; and

d. Whether POS technology is available to remedy the Plaintiff and class concerns.

48.     Whether and to what extent Defendant's POS technology and related policies, practices and procedures are unlawful presents a common question with only one answer: Defendant's POS technology and related policies, procedures and practices either result in ADA violations or they do not. If Defendant's POS technology and related policies, procedures and practices are discriminatory, then each class member is entitled to injunctive relief. On the other hand, if the POS technology and related policies, procedures and practices do not result in these issues, then no class member is entitled to injunctive relief. Either way, this proceeding will generate a common answer, the determination of which "will resolve an issue… central to the validity of each one [of the class members'] claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

## ADEQUACY OF REPRESENTATION

49.     Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation and who possess specific expertise in the context of class and other litigation under the ADA.

## CAUSE OF ACTION

## VIOLATION OF TITLE III OF THE ADA

50.    The allegations set forth in the previous paragraphs are incorporated by reference.

51.    Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Specific provisions within the ADA require, *inter alia*, that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulations set forth numerous examples of "auxiliary aids and services," including "… accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b). The term "auxiliary aids and services" also includes the "[a]cquisition or modification of equipment or devices; and [o]ther similar services and actions." *Id.*

52.    The ADA Title III regulations further require that "[i]n order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.* (emphasis added) See also, *Lucky Brands Statement of Interest*, at page 10; 75 Fed. Reg. 43452, 43458 (July 26, 2010) (Where the DOJ noted in its Advanced Notice

of Proposed Rule Making that "[i]ndividuals with disabilities who engage in financial or other transactions should be able to do so independently …."). The House Committee on Education and Labor stated that it intended "that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times," and that technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities." H.R. Rep. No. 101-485, pt. 2, at 108 (1990).  Similarly, the United States Department of Justice, in promulgating the rules implementing Title III in 1991, explained that it was "not possible to provide an exhaustive list [of auxiliary aids and services], and such an attempt would omit new devices that will become available with emerging technology." 28 C.F.R. pt. 36, App. C, p. 912 (discussion of § 36.303).

53.     Defendant's ongoing failure to provide Plaintiff full, equal, private, safe, and independent enjoyment of the POS terminals constitutes unlawful discrimination on the basis of a disability in violation of the ADA and its implementing regulations. See e.g., 42 U.S.C. § 12101 et seq.; 42 U.S.C. § 12182(a); 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(a); 28 C.F.R. § 36.303(c)(1); 28 C.F.R. pt. 36, App. C, p. 912 (discussion of § 36.303); and 28 C.F.R. § 36.303(c)(1)(ii).

54.     Defendant has discriminated, and continues to discriminate, against Plaintiff by failing to ensure its POS terminals are private, safe, independent, and full and equal access to persons who are blind or who have low-vision within the meaning of the ADA.

55.     Plaintiff and the classes have been, and continue to be, denied full, equal, private, and safe and independent access to Defendant's POS terminals.

56.     Defendant's conduct is ongoing and continuous, and Plaintiff has been harmed by Defendant's conduct.

57.     Unless Defendant is restrained from continuing its ongoing and continuous course of conduct, Defendant will continue to violate the ADA and will continue to discriminate against and inflict injury upon Plaintiff and others with visual disabilities.

58.     Given that Defendant has not complied with the ADA's requirements to make its facilities fully accessible to, and independently usable by, individuals with visual disabilities, Plaintiff invokes her statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

a.      A declaratory judgment that Defendant is in violation of the ADA and its implementing regulations;

b.      A company-wide injunction which directs Defendant to take all steps necessary to bring all of its POS terminals into full compliance with the requirements set forth in the ADA, so that they are fully accessible to, and independently usable by, individuals with visual disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that all of its POS terminals are fully in compliance with the relevant requirements of the ADA to ensure that

Defendant has adopted an institutional policy and practice that will in fact cause Defendant to remain in compliance with the law;

c.      An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing her counsel as class counsel;

d.      Payment of costs of suit;

e.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, and nominal damages; and,

f.      The provision of whatever other relief the Court deems just, equitable and appropriate.

Date: June 22, 2023

Respectfully submitted,

**THRONDSET MICHENFELDER, LLC**

*/s/ Patrick W. Michenfelder*
Patrick W. Michenfelder (#024207X)
Chad Throndset (#0261191X)
Jason Gustafson (#0403297)
222 South Ninth Street, Suite 1600
Minneapolis, MN 55402
Tel: (763) 515-6110
Fax: (763) 226-2515
pat@throndsetlaw.com
chad@throndsetlaw.com
jason@throndsetlaw.com

*Attorneys for Plaintiff*